IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HARLEY LOVEJOY, | ) | CASE NO. 1:10-CV-1417 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MAGISTRATE JUDGE McHARGH** |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the undersigned pursuant to the consent of the parties. (Doc. 18). The issue before the Magistrate Judge is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Harley Lovejoy's application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

On December 14, 2005, Harley Lovejoy ("Plaintiff" or "Lovejoy") filed an application for Supplemental Security Income benefits alleging that he became disabled on December 1, 2005.[1] (Tr. 182-84). Lovejoy's application was denied initially and upon reconsideration. (Tr. 121-26). He timely requested and was granted an administrative hearing before Administrative Law Judge

---

[1] Plaintiff was granted Supplemental Security Income benefits as a child in March 1995 due to suffering from mental retardation and learning disorders. (Tr. 99). After Lovejoy turned 18 years old, the Social Security Administration reevaluated his disability status and determined that his disability ceased on September 1, 1997. *Id.* On April 29, 1999, Administrative Law Judge John M. Lischak affirmed the administration's decision. (Tr. 95-109). Plaintiff did not appeal this decision. (Pl.'s Br. at 2).

Dennis R. Greene (the "ALJ" or "ALJ Greene"). (Tr. 129, 31-40).

On September 15, 2008, ALJ Greene conducted a hearing via video conference. (*See* Tr. 413-45). ALJ Greene presided over the hearing from Oak Brook, Illinois, whereas Plaintiff and his counsel appeared in Cleveland, Ohio. (Tr. 14). Vocational expert, Mr. James Breen, and Medical experts, Drs. James McKenna ("ME McKenna") and Kathleen O'Brien ("ME O'Brien"), also appeared at the hearing and offered testimony. (Tr. 413-45). On November 6, 2008, ALJ Greene issued an unfavorable decision denying Plaintiff's application for benefits. (Tr. 14-23). In his review of Plaintiff's application, the ALJ applied the five-step sequential evaluation analysis,[2] and concluded that Plaintiff was not disabled. *Id.* Subsequently, Lovejoy requested review of the ALJ's

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)   If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)   If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)   If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)   If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)   Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

decision from the Appeals Council. (Tr. 9). However, on April 27, 2010, the council denied Lovejoy's request, thereby making ALJ Greene's decision the final decision of the Commissioner. (Tr. 4-6). Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff, born on August 28, 1979, was twenty-six years old on the date his application was filed, and deemed a "younger person" for Social Security purposes. (Tr. 152, 21); 20 C.F.R. § 416.963(c). Lovejoy attended school through the tenth grade and was enrolled in special education classes. (Tr. 420-21). Although he has maintained brief employment with various employers, none of these jobs qualified as past relevant work pursuant to 20 C.F.R. § 416.965. (*See* Tr. 440).

## II. **MEDICAL EVIDENCE**[3]

On February 13, 2006, Lovejoy presented to Dr. Mitchell Wax, a psychologist, for a consultative examination. (Tr. 361-67). Dr. Wax's evaluation report summarizing his observations of Plaintiff consistently noted that Plaintiff was malingering throughout the examination, causing Dr. Wax to diagnose Lovejoy with malingering. *Id.* For example, during Dr. Wax's examination of Plaintiff's sensorium and cognitive functioning, he remarked that it appeared as if Plaintiff was intentionally answering questions incorrectly. (Tr. 364). Notably, the doctor commented that Plaintiff "presented with no clear symptoms that were diagnosable" and that "[n]o assessment of his [global assessment of] functioning could be made due to malingering." However, he estimated that Plaintiff's IQ fell within the borderline to low average range. (Tr. 365-67).

On March 2, 2006, state agency consultative examiner, Dr. Allan Berger, conducted a review of Plaintiff's medical file to assess Plaintiff's physical residual functional capacity ("RFC"). (Tr.

---

[3]The evidence herein recited solely reflects the medical information in the Lovejoy's file created after his application date in December 2005.

368-75). Other than finding that Lovejoy had limited vision and should avoid all exposure to hazards such as machinery and heights, Dr. Berger opined that Plaintiff had no other restrictions on his physical ability to work. *Id.*

Next, on April 3, 2006, Dr. Alice Chambly, a state agency consultant, examined Plaintiff's medical record to assess his mental RFC. (Tr. 376-93). She opined that Lovejoy was moderately limited in the following areas of mental functioning: 1) understanding and remembering detailed instructions; 2) carrying out detailed instructions; 3) maintaining attention and concentration for extended periods; 4) completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; 5) accepting instructions and responding appropriately to criticism from supervisors; and 6) responding appropriately to changes in the work setting. (Tr. 376-77). However, she found that he was "not significantly limited" in the remaining 14 areas of mental functioning examined. *Id.* After acknowledging Dr. Wax's diagnosis of malingering, Dr. Chambly concluded that there was not sufficient evidence in Lovejoy's file to refute the prior ALJ's determination that Lovejoy was capable of performing simple, routine tasks. (Tr. 378). Therefore, she adopted the prior ALJ's mental RFC dated April 29, 1999, pursuant to Acquiescence Ruling 98-4. *Id*.

### III. MEDICAL EXPERT TESTIMONY

ALJ Greene sought two medical experts to testify during Plaintiff's hearing, Drs. James McKenna and Kathleen O'Brien. First, Dr. James McKenna testified as to Lovejoy's physical impairments. ME McKenna is board certified in internal medicine and pulmonary disease. (Tr. 429). He testified that Lovejoy had monocular vision because he was effectively blind in his right

eye, and that he would be vulnerable to hazards coming from his right side  (Tr. 431-32).

Second, Dr. Kathleen O'Brien testified as to Plaintiff's mental impairments.  Dr. O'Brien is a licensed clinical psychologist.  (Tr. 433).  She testified that it was impossible for her to determine Lovejoy's level of mental functionality because the consultative examinations in the file, which were performed four years apart, both diagnosed Plaintiff with malingering.[4]  (Tr. 434).  Additionally, ME O'Brien observed that Dr. Wax noted several instances during the evaluation when Lovejoy "began to apparently address questions with some honesty, and then caught himself and changed his answers."  *Id.*  Nevertheless, ME O'Brien remarked that Plaintiff's IQ score in the file, assessed when Plaintiff was 18 years old, would fall within the borderline intellectual range, and that "someone with [this] level of IQ is most often capable of simple tasks that are easily learned and that don't require a lot of changes in the functioning or the performance of those tasks."  *Id.*

Upon cross examination by Plaintiff's counsel, counsel questioned ME O'Brien regarding the results from intelligence tests performed on Lovejoy in 1995 and 1997, when he had previously filed applications for disability benefits.  Psychologist, Dr. David House, performed a consultative examination of Lovejoy in 1995.  (Tr. 394-98).  Dr. Richard Davis, also a psychologist, conducted the same in 1997.  (Tr. 399-405).  ME O'Brien explained that the results from the test conducted by Dr. House were somewhat unreliable because the test was based upon Lovejoy's mother's self reports, and that given the history of malingering in the record, ME O'Brien did not think that the results were an accurate indication of Plaintiff's abilities.  (Tr. 437).  On the other hand, ME O'Brien

---

[4]Dr. O'Brien was referring to Dr. Wax's examination performed in 2006 and the consultative examination performed by clinical psychologist, Dr. Michael Leach, in May 2002 (Tr. 280-83).  Dr. Leach commented, "[*i*]*t should be noted that Mr. Lovejoy was viewed as malingering. He was reluctant to answer questions, and would respond, "I forget" or "I don't know" to even simple questions about his history.*"  (Tr. 280) (emhasis in original).

5

credited the IQ scores assessed by Dr. Davis – 71 for verbal, 74 for performance, and a full scale score of 71. (Tr. 402). ME O'Brien concluded that the results from Plaintiff's prior examinations (performed by Drs. House and Davis) were consistent with the findings revealed in the two recent evaluations (conducted by Drs. Leach and Wax). (Tr. 437-38). Additionally, she opined that Lovejoy did not meet or equal Listing 12.05. *Id*.

## IV. ALJ's DECISION

After completing a review of the record, ALJ Greene determined that Lovejoy was not disabled under the Social Security regulations. (Tr. 14-23). At step one of the sequential evaluation analysis, the ALJ found that Lovejoy had not engaged in substantial gainful activity since his alleged onset date of December 14, 2005. (Tr. 16). At step two, ALJ Greene ruled that Plaintiff suffered from the following severe impairments: right eye blindness, conduct disorder and borderline intellectual functioning. *Id*. But, at step three, ALJ Greene concluded that Plaintiff's severe impairments did not individually, or in combination, meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18). Before proceeding to step four, the ALJ held that Lovejoy retained the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. (Tr. 18). ALJ Greene restricted Plaintiff to "work involving simple repetitive tasks in an environment not having high production requirements and not involving hazardous work such as unprotected heights or dangerous machinery or hazards coming at [Plaintiff] from the right side." *Id*. At step four, the ALJ ruled that Lovejoy had no past relevant work experience. (Tr. 21). Finally, at step five ALJ Greene found that Lovejoy could perform work which existed in significant numbers in the national economy, such as that of a janitor, kitchen helper, fast food worker, cashier, information clerk or as a food and beverage order clerk. (Tr. 22).

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, regardless of whether such evidence

was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### VII.  ANALYSIS

Lovejoy attacks the sufficiency of ALJ Greene's decision on one ground.  He alleges that the ALJ failed to fully and fairly develop the record.  In furtherance of this argument, Plaintiff maintains that the ALJ: 1) should have obtained additional evidence to resolve the conflict in the record regarding Plaintiff's alleged malingering; 2) erred by failing to adequately address why Plaintiff did not equal Listing 12.05 for mental retardation; and 3) neglected to articulate the weight he assigned to the opinions offered by consultative examiner, Dr. Mitchell Wax.

### A.  ALJ's Duty To Develop The Record

It is well-established that the ALJ carries the responsibility for ensuring "that every claimant receives a full and fair hearing. . . ."  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983)). Yet, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  It is only under special circumstances, such as when the claimant is unrepresented by council, that an ALJ has a special duty to develop the record.  *See Lashley*, 708 F.2d at 1051-52.  Ultimately, it is the claimant's burden to prove that he is disabled and entitled to benefits.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).  The claimant is "responsible for furnishing evidence that can be used to reach the conclusion that [he] is disabled."  *Rise v. Apfel*, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. Oct. 13, 2000) (Table).

8

Plaintiff's argument here is a criticism of the ALJ's reliance upon the testimony offered by ME O'Brien during the hearing.  Lovejoy contests the ALJ's decision to afford great weight ME O'Brien's opinions.  Plaintiff asserts that ALJ Greene should have ordered Plaintiff to undergo another consultative examination or should have sought additional information instead of crediting ME O'Brien's opinions because ME O'Brien's testimony was inconclusive regarding Plaintiff's mental abilities.  In addition, Plaintiff maintains that additional testing would reveal Plaintiff's current intellectual functioning level, given that Plaintiff's prior IQ scores were more than ten years old at the time of the hearing.

At the outset, the Court notes that Plaintiff's argument is not compelling because it down plays a key factor present in this case.  While Lovejoy contends that the ALJ's decision should be reversed because he did not fully and fairly develop the record by failing to request an *additional* consultative examination, Lovejoy has not confronted the fact that there was a consultative examination performed in this case, the results of which were inconclusive because of Plaintiff's malingering.  This omission is troubling because Plaintiff has not pointed to any case law, nor is the Court aware of any, indicating that the claimant is entitled to additional testing, at the government's expense, when the results of the initial consultative examination are deficient because of the claimant's volitional misleading behavior.  Under Plaintiff's theory, the government would have to bear the expense of additional testing even when the claimant's misbehavior led to the ambiguities in the consultative examiner's findings – ambiguities which Plaintiff now argues preclude the ALJ from relying upon the examination results.  While it may be true that the record is not as detailed as it could have been, the dearth of definitive evidence from the consultative examination was perpetuated by Plaintiff's doing.

This line of reasoning is also problematic because it appears to shift Plaintiff's burden to come forward with evidence establishing that he is disabled, onto the ALJ to come forward with conclusive evidence that Plaintiff is not disabled. But, such is not the legal standard. *See Moon*, 923 F.2d at 1181 ("The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)."). As the Sixth Circuit stated, "[t]he claimant has the burden through the first four steps of either establishing a finding of 'disabled' or precluding a finding of 'not disabled.'" *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 34 (6th Cir. 2010) (*citing Moon*, 923 F.2d at 1181).

Although requesting another consultative examination *may* have elicited additional information regarding Plaintiff's mental functioning, Plaintiff has not come forward with evidence showing that an additional examination was *necessary* in order for the ALJ to render a decision on Lovejoy's application. The regulations governing Social Security claims specify that "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. § 416.917). While the ALJ has the responsibility to make a full inquiry into the issues before rendering a decision, 20 C.F.R. § 416.1444, in explaining the contours of this duty, the Sixth Circuit stated, "'[f]ull inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (*citing Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)) (emphasis in original). This reasoning aptly applies to the instant case.

In fact, there was sufficient evidence in the record to substantiate the ALJ's decision. Despite her inability to determine Plaintiff's precise level of mental functionality, ME O'Brien

10

testified that a person with Plaintiff's IQ would be able to perform simple tasks. Furthermore, the ALJ noted how ME O'Brien testified that Plaintiff's prior consultative examiners, Drs. Mitchell Wax and Michael Leach, diagnosed him with malingering. Dr. Leach examined Plaintiff in 2002 and commented that Plaintiff was malingering during the exam, "did not appear to exhibit any significant learning disorder", and had "no motivation to obtain a job." (Tr. 283). Similarly, four years later when Plaintiff presented to Dr. Wax, the doctor diagnosed malingering and estimated that Plaintiff's IQ fell within the borderline to low average range. (Tr. 366). State agency reviewing physician, Dr. Alice Chambly, confirmed the findings of malingering within Plaintiff's file and determined that there was not sufficient evidence to refute the agency's prior determination that Plaintiff could perform simple routine work. Given the consistent evidence of malingering in Lovejoy's file, along with the medical opinion evidence showing that he was capable carrying out simple tasks, the undersigned finds that there was sufficient evidence in the record to support the ALJ's decision. Accordingly, it was not *necessary* for the ALJ to seek additional information in order to render a decision on Plaintiff's application. The evidence appearing in the record supports the ALJ's decision that Lovejoy is not disabled, and Plaintiff has not come forward with any medical evidence illustrating that his impairments rendered him disabled during the relevant time period. *See Landsaw*, 803 F.2d at 214.

### B. Medical Equivalency

The Social Security regulations recognize mental retardation as a disabling condition under Listing 12.05. *See* 20 C.F.R. Pt 404, Sbpt P, App. 1, § 12.05. Plaintiff asserts that the ALJ did not fully explain why he did not at least medically equal Listing 12.05(C), which provides:

11

> § 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D, are satisfied.
>
> . . .
>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function

*Id*.

Notably, "[i]n order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.* 348 F.3d 124, 125 (6th Cir. 2003) (internal citations omitted). But, a claimant may be deemed disabled when his impairments combine to produce the medical equivalent of a listed impairment, "if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986); 20 C.F.R. § 416.926(b). The claimant must demonstrate that his medical findings are "equal in severity to *all* the criteria for the one most similar listed impairment." *Foster*, 279 F.3d at 355. The question of equivalency must be established by medical evidence. *Land*, 814 F.2d at 245; *Zapf v. Comm'r of Soc. Sec.*, 145 F.3d 1335 (6th Cir. 1998) (Table). Moreover, the claimant bears the burden of proving that he equals or meets the listing. *Retka v. Comm'r of Soc. Sec.*, No. 94-2013, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) (*citing Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)).

In finding that Lovejoy did not meet or equal the requirements for Listing 12.05(C), ALJ Greene merely indicated that Plaintiff's IQ scores did not fall below 70 as required by the listing. The Court acknowledges that the ALJ's comments with regard to this issue were brief and that the ALJ could have better expounded upon the reasons supporting his conclusion. However, the ALJ's remarks were not so lacking as to be legally insufficient. Plaintiff admits that his performance, verbal and full scale IQ scores were 74, 71 and 71 respectively, thus precluding Plaintiff from meeting the listing. Though Lovejoy contends that the commentary provided by ALJ Greene was insufficient to explain why he did not medically equal Listing 12.05(C), Lovejoy failed to point to any medical evidence supporting his belief that he equaled the listing. For example, Plaintiff did not proffer any evidence demonstrating how his mental impairments restricted his abilities beyond what was reflected in his IQ scores. In contrast, there was evidence in the record, namely ME O'Brien's testimony, confirming that Plaintiff did not medically equal the listing. Accordingly, it was reasonable for the ALJ to conclude that Lovejoy did not equal Listing 12.05(C). *See Foster, 279 F.3d at 355* ("Although the presence of multiple impairments can on occasion support a finding that the impairments are equivalent to a listing, a finding of equivalence under Listing 12.05(C) will 'very rarely be required.'") (*citing Riley v. Apfel, No. 97-1799, 1998 WL 553151, at \*5 (6th Cir. Aug. 20, 1998)*).

### C. Dr. Wax's Opinions

Finally, Plaintiff submits that the ALJ erred by neglecting to articulate what weight he assigned to the opinions of consultative examiner, Dr. Wax, and that the ALJ was required to provide reasons for rejecting Dr. Wax's opinions if he did not assign any weight to the doctor's opinions. This assignment of error does not warrant much discussion because ALJ Greene's

13

decision reads that he "afford[ed] greater weight to the opinions of the state agency examining and reviewing physicians and psychologists", one of whom was Dr. Wax. (Tr. 21). The ALJ's opinion specifically referenced Dr. Wax's diagnosis of malingering which the ALJ implicitly accepted when he denied Plaintiff's disability application. Additionally, ALJ Greene adopted Dr. Wax's assessment that Plaintiff suffered from borderline intellectual functioning as the ALJ labeled this condition as a severe impairment at step two of his analysis. A review of the ALJ's decision reveals that he positively considered and accepted Dr. Wax's opinions. Plaintiff's arguments here are thereby overruled.

## VIII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: November 8, 2011.